**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melanie Racz, | ) No. CV 10-0133-PHX-GMS |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| I-Flow Corporation; DJO, LLC; DJO, Inc., | ) |
| Defendants. | ) |

Pending before the Court are the following motions: (1) Motion to Dismiss (Doc. 19) filed by Defendants DJO, LLC and DJO, Inc. ("DJO"); and (2) Motion to Dismiss Third Cause of Action (Doc. 24) filed by Defendant I-Flow Corporation ("I-Flow") and joined by DJO (Doc. 25). For the reasons presented below, the Court dismisses Plaintiff's Third Cause of Action (Doc. 24), without prejudice, and denies DJO's Motion to Dismiss. (Doc. 19).

**BACKGROUND**

The Complaint alleges the following. At the end of April 2003, Plaintiff Melanie Racz ("Plaintiff" or "Racz") underwent arthroscopic surgery on her right shoulder. (Doc. 1). At that time, Plaintiff's surgeon inserted the catheter of a PainBuster® pain pump into her right shoulder joint, in the manner instructed and directed. (*Id.*). Following her surgery, Plaintiff developed extensive areas of articular cartilage degeneration in the glenohumeral joint of her right shoulder. Plaintiff contends that she diligently investigated the possible causes of her

1  pain and the deterioration of her right shoulder by, among other things, consulting with
2  health care professionals. (*Id.*). Apparently, none of the health care professionals attributed
3  Plaintiff's pain to the PainBuster® pain pump. (*Id.*). In April 2008, Plaintiff's friend emailed
4  her a law firm's internet advertisement which indicated that pain pumps were linked to the
5  destruction of shoulder cartilage. (*Id.*). Plaintiff then took steps to determine whether the
6  injury in her right shoulder was in fact related to the April 2003 surgery and to identify the
7  manufacturer of the pump. (*Id.*).

8  Plaintiff now contends that the administration of anesthetic solution by the
9  PainBuster® pain pump directly led to cartilage and tissue damage in her right shoulder. She
10 claims that Defendants were involved at all stages of production of the PainBuster® pain
11 pump, from design to manufacturing to marketing the pump. The complaint states that
12 Defendants represented to the public and health-care professionals that the pump was a safe
13 and effective product to alleviate pain; however, Defendants, in fact, knew that the pump had
14 not been cleared by the United States Food and Drug Administration ("FDA") for use in
15 joints. Moreover, the complaint alleges that Defendants knew that the FDA had rejected
16 requests by other manufacturers for permission to market similar devices. Thus, Plaintiff
17 contends that Defendants knew or should have known of the safety concerns related to the
18 pump, and failed to conduct sufficient safety studies and to warn patients and health-care
19 professionals about the risks attributed to the use of the pump in this manner.

20 **DISCUSSION**

21 **I. Failure to State a Claim**

22 To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil
23 Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a
24 "formulaic recitation of the elements of a cause of action"; it must contain factual allegations
25 sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,
26 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations
27 . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"
28 *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*,

- 2 -

1  550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content
2  that allows the court to draw the reasonable inference that the defendant is liable for the
3  misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550
4  U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a
5  defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent
6  with' a defendant's liability, it 'stops short of the line between possibility and plausibility of
7  entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).
8  When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll
9  allegations of material fact are taken as true and construed in the light most favorable to the
10 nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal
11 conclusions couched as factual allegations are not given a presumption of truthfulness, and
12 "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a
13 motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).
14 Under Arizona law, there is no independent tort of conspiracy. *Estate of Hernandez*
15 *v. Flavio*, 187 Ariz. 506, 930 P.2d 1309 (1997). "A civil conspiracy requires an underlying
16 tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc.*
17 *v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545, 5 P.3d 249, 259 (Ct. App.
18 2000). "'A mere agreement to do a wrong imposes no liability; an agreement plus a wrongful
19 act may result in liability.'" *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement*
20 *Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002)
21 (quoting *Baker*, 197 Ariz. at 542, 5 P.3d at 256). Plaintiff correctly states that a
22 "conspiratorial agreement need not be express; it may be implied by the tortious conduct
23 itself." *Dawson v. Withycombe*, 216 Ariz. 84, 103, 163 P.3d 1034, 1053 (Ct. App. 2007).
24 In the complaint, Plaintiff appears to base her conspiracy claim on an alleged
25 "violation of FDA regulations" rather than a tort recognized by Arizona law as a basis for a
26 civil conspiracy claim. (Doc. 1). Plaintiff refers to Defendants as knowing "they could not
27 lawfully promote" the pain pump for orthopedic use, and nonetheless "enter[ing] into an
28 agreement to promote the PainBuster® pain pump for orthopedic use, in violation of FDA

1 regulations." Finally, Plaintiff summarized her allegations by stating that the Defendants had "entered into a civil conspiracy . . . to unlawfully promote" the pain pump "despite the fact that regulatory consultants had advised DJO that orthopedic use of pain pumps was not permitted by the indications approved by the FDA." In her Response, Plaintiff contends that her conspiracy claim is actually based on the underlying torts of strict liability and negligence. (Doc. 26). Her complaint says otherwise. In any event it is far from clear to the Court that strict liability is a "tort" for purposes of supporting a civil conspiracy claim. *See* RESTATEMENT (SECOND) OF TORTS § 876 (1979) (noting that the "Institute takes no position on whether the rules stated in [the Section on Persons Acting in Concert] are applicable when the conduct of either the actor or the other . . . involves strict liability for the resulting harm"). Nevertheless, the Court will dismiss the complaint as to this claim without prejudice and allow Plaintiff to file an amended complaint that complies with the Federal Rules of Civil Procedure.

**II. Statute of Limitations**

DJO contends that Plaintiff's claims are time barred because A.R.S. §§ 12-542 and 12-551, the statutes relevant to Plaintiff's claims, impose a two-year statute of limitations. (Doc. 19). Plaintiff did not file her claim until nearly seven years after her alleged injury. Thus, Defendants contend that the statute of limitations for each of her claims has long expired.

After Plaintiff underwent surgery in April 2003, she developed articular cartilage degeneration in a joint in her right shoulder. According to Defendants, Plaintiff, aware of her condition, either discovered or reasonably should have discovered the cause of her injury long before her friend emailed her the law firm advertisement. Plaintiff asserts that she diligently investigated the source of her injury. (Doc. 21). Because she did not discover that her injury was caused by Defendants' conduct until April 2008, the statute of limitations was tolled until that day. Plaintiff filed her complaint on January 22, 2010, and thus her suit was timely filed within the two-year statute of limitations.

A complaint may be dismissed when it "shows on its face that the cause of action is

barred by the statute of limitations." *Doe v. Garcia*, 5 F. Supp.2d 767, 770 (D. Ariz. 1998). Under Arizona law, the "general rule is that a tort claim accrues when a plaintiff knows, or through the exercise of reasonable diligence should know, of the defendant's wrongful conduct." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 177, 913 P.2d 1092, 1095 (1996) (citing *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979)); *see also Lawhon v. L.B.J. Inst. Supply, Inc.*, 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (Ct. App. 1988) (noting that a "cause of action 'accrues' when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a *particular* defendant's negligent conduct"). Plaintiff's complaint states that following her surgery, she "diligently investigated the possible causes of the continued pain and deterioration in her right shoulder by, among other things, repeatedly consulting with health care professionals." In her Response, Plaintiff contends that despite these consultations, she "had no reason to suspect that DJO was the 'particular defendant' whose actions caused her injury." If Plaintiff can show that she did, in fact, diligently investigate the source of her pain and was unable to discover its cause until 2008, then Plaintiff will defeat DJO's statute of limitations defense. The Court in reviewing a complaint must treat allegations of material fact as true, and therefore, for purposes of this motion to dismiss, Plaintiff has met her burden of showing that her claims are not time barred.

**IT IS ORDERED** that Defendants' Motion to Dismiss Third Cause of Action (Doc. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that DJO's Motion to Dismiss (Doc. 19) is **DENIED**.

**IT IS FURTHER ORDERED** directing Defendants to file their Answers to the Complaint on or before **November 26, 2010**.

DATED this 12th day of November, 2010.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge